STATE OF CONNECTICUT *v.* LAWRENCE HARRIS
(10738)
(10739)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued December 3, 1982—decision released February 15, 1983

*Kenneth Rosenthal,* assistant public defender, with whom, on the brief, was *David F. Egan,* assistant public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

GRILLO, J. By two separate informations, the defendant was charged with three counts of robbery

in the first degree.[1] Specifically, the state charged violations of General Statutes § 53a-134(a) (4), alleging that the defendant or another participant in the crimes displayed or threatened the use of what he represented by his words or conduct to be a pistol, revolver or other firearm. As all three robberies occurred in virtually the same location, only minutes apart, the informations were consolidated for trial. After a trial to a jury, the defendant was found guilty as charged. In this appeal from the judgments rendered, the defendant claims error in the refusal of the trial court to charge the jury on the offense of robbery in the second degree[2] as a lesser included offense.

The jury might have found the following facts relevant to the resolution of the present appeal:

[1] In its entirety, General Statutes § 53a-134 states: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be dicharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[2] In its entirety, General Statutes § 53a-135 states: "ROBBERY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or

On March 18, 1980, each of the three complaining witnesses was robbed at gunpoint in the County Street area after leaving the New Haven Correctional Center. Items of personal property, including two pocketbooks, were taken from the victims. All three victims identified the defendant as the perpetrator of the crimes.

The defendant testified that he and one William Jordan, while on their way to a package store, were in the general area at the time of the robberies and in fact witnessed part of the incidents, although he denied committing the crimes. The defendant stated that when he and Jordan returned to the defendant's home approximately fifteen minutes later he found his brother, Silas Harris, and one Albert Eaddy in his bedroom. Eaddy possessed a toy pistol and was going through two pocketbooks.

Jordan testified that prior to the robberies he had observed Eaddy carrying a toy gun in the vicinity of the New Haven Correctional Institute.[3] Subsequently, on his way back from the liquor store with the defendant, he saw Eaddy, who was still in possession of the toy pistol, running into an alley and away from the scene of the robberies. As he was also present in the bedroom upon returning to the defendant's residence, he once again observed Eaddy in possession of the toy pistol and what was apparently a purse.

---

another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument.

"(b) Robbery in the second degree is a class C felony."

"Deadly weapon" means any weapon, whether loaded or unloaded, from which a shot may be discharged. General Statutes § 53a-3 (6). Obviously, this definition would include a pistol.

[3] When questioned as to how he knew that the gun possessed by Eaddy was a toy, Jordan stated that he had inquired of Eaddy and Eaddy had responded by allowing him to inspect it.

The defendant's brother, Silas Harris, testified that he and Eaddy committed two of the robberies in the County Street area on March 18. He further represented that Eaddy was in possession of a gun, and that after the robberies they proceeded to the defendant's residence.

From our examination of the record before us, it is apparent that defense counsel adopted a two-tier strategy in defending against the first degree robbery charges. First, after filing a notice of an alibi defense, the defendant presented evidence that, although he was in the general area at the time of the crimes, he was not involved as either a principal or a participant, and further that Silas Harris and Eaddy actually perpetrated the crimes. The trial court charged the jury relative to the alibi defense. Second, the defendant attempted to show through proffered testimony that the gun used in the commission of the crimes was in fact a toy gun incapable of firing a shot, a circumstance which would constitute an affirmative defense to a charge of robbery in the first degree; General Statutes § 53a-134 (a) (4); and would thus reduce the crimes from robbery in the first degree to robbery in the second degree. See *State* v. *Hawthorne,* 175 Conn. 569, 573–74, 402 A.2d 759 (1978). On appeal, it is the defendant's contention that his introduction of evidence relating to the inoperability of the gun, coupled with the satisfaction of other prerequisites necessary for a lesser included offense instruction, required the trial court to charge the jury on robbery in the second degree as he requested.

It is the state's contention that the evidence presented linking Silas Harris and Eaddy to the crimes, conjoined with the evidence relevant to the

existence of a toy gun, does not constitute an affirmative defense, but merely a denial of the allegations of the charge consistent with the defendant's alibi claim. The state asserts that evidence tending to show that the crimes were perpetrated with a toy pistol is immaterial to an affirmative defense, characterizing an affirmative defense claim as one which concedes the basic position of the state, yet nevertheless denies guilt based upon mitigating circumstances. Underscoring the inconsistent alternative positions of alibi and affirmative defense assumed by the defendant, the state fears that contrived defenses would result "[i]f a defendant could deny participation in a robbery, offer evidence of someone else's involvement using a toy gun, and still avail himself of the affirmative defense under § 53a-134 (a) (4)." The state therefore concludes that to utilize the benefit of an affirmative defense claim, the defendant should "at least" concede his participation in the crime.

In *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), we set forth certain conditions which must be met before a charge on a lesser included offense will be given: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence introduced by either the state or the defendant, or by a combination of their proofs, which justified conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the

greater offense but guilty of the lesser." The state concedes that the first two conditions have been met but insists that because of the inconsistent situation that would be created if an affirmative defense were allowed, conditions three and four cannot be fulfilled. We disagree.

Generally, inconsistent defenses may be interposed in a criminal case. *United States* v. *Demma,* 523 F.2d 981, 985 (9th Cir. 1975); *Whittaker* v. *United States,* 281 F.2d 631, 632 (D.C. Cir. 1960). That a defense is interposed which is inconsistent with the defendant's alibi theory does not preclude an instruction as to that defense. *People* v. *Hansma,* 84 Mich. App. 138, 144–45, 269 N.W.2d 504 (1978). "[T]he fact that one defense is on the theory that [the] accused did not commit the offense, as where he relies on alibi, does not deprive him of the right to avail himself of other defenses . . . ." 22 C.J.S., Criminal Law § 54; see also *Johnson* v. *United States,* 426 F.2d 651, 656 (D.C. Cir. 1970); *United States* v. *Harbin,* 377 F.2d 78, 80 (4th Cir. 1967). To compel a defendant to admit guilt in order to invoke a defense effectively relieves the prosecution of proving his guilt beyond a reasonable doubt and frustrates the assertion of the defense itself and undermines its policy. *People* v. *Perez,* 62 Cal. 2d 769, 776, 401 P.2d 934 (1965).

The state, in advancing its claim, cites *State* v. *Rosado,* 178 Conn. 704, 707, 425 A.2d 108 (1979), wherein this court held that "[a] claim of innocence or a denial of participation in the crime charged is not a legally recognized defense and does not entitle a defendant to a theory of defense charge." In *Rosado,* however, the defendant did not assert a recognized legal defense. This court, noting the

plethora of affirmative defenses available to a defendant, held that when there is evidence indicating the availability of a recognized defense, a defendant is entitled as a matter of law to a theory of defense instruction.[4] Id., 708. Here there exists a recognized affirmative defense. General Statutes § 53a-134 (a) (4).

Quite apart from whether the defendant might have been entitled to a "theory of defense" charge, the court was under a duty to instruct the jury upon any appropriate lesser offense included in the charge of robbery in the first degree. We now turn to a consideration of whether the conditions delineated within *Whistnant* as prerequisites to a lesser included offense instruction are present in this case. There was extensive evidence introduced at trial that a toy gun was used in the robberies and that subsequently the same gun was present in the defendant's room, although it was claimed to be Eaddy's pistol. Upon being cross-examined by the prosecutor, the defendant was knowledgeable not only as to the description of the toy gun, but also as

---

[4] The quantum of evidence presented relevant to the defendant's affirmative defense distinguishes this case from *State* v. *Cassino*, 188 Conn. 237, 449 A.2d 154 (1982). In *Cassino*, we upheld the trial court's refusal to charge the jury on the issue of self-defense. Id., 244. Although we attached significance to the fact that the defendant did not admit committing the crime charged; id., 243; our decision was based upon the conclusion that the defendant had failed to introduce sufficient evidence to warrant a self-defense instruction. Id., 243–44. Similarly, we distinguish those cases where the failure of the defendant to concede his commission of the prohibited act which he claimed to have been induced by police misconduct was partly relied upon in determining that the evidence was insufficient to support a defense of entrapment. See *State* v. *Hawkins*, 173 Conn. 431, 436, 378 A.2d 534 (1977); *State* v. *Avery*, 152 Conn. 582, 584, 211 A.2d 165 (1965).

to its use and operation.[5] The state's witnesses, the complainants, described the pistol as "silver and black," "two tone color," "black and white," and "a silver piece." Jordan described the toy gun as "grayish black." The defendant also testified that it was a "little black," and that it was metal.

In view of the evidence presented above, we conclude that there was sufficient evidence to justify conviction of the lesser offense. Moreover, proof of the element which differentiates the offenses, the operability of the gun, was sufficiently in dispute so as to permit a finding that the defendant was guilty solely of second degree robbery. *State* v. *Whistnant,* supra. Although the trier must draw inferences based upon facts established by evidence; *State* v. *Saracino,* 178 Conn. 416, 420, 423 A.2d 102 (1979); it is also the function of the trier to judge the weight and credibility of the proffered evidence upon which such reasonable inferences may or may not be drawn. *State* v. *Staples,* 175 Conn. 398, 407, 399 A.2d 1269 (1978). Under the circumstances of the present case, we cannot exclude as a matter of law the possibility that the evidence presented might support a conviction for a lesser offense in the eyes of the jury. See *State* v. *Falby,* 187 Conn. 6, 30, 444 A.2d 213 (1982).

---

[5] "Q. What kind of toy gun, what did it look like?

"A. A little black—a—it looked like—I don't know. It wasn't plastic, it was metal.

"Q. It looked like a real gun though?

"A. It looked like it shot some kind of—some little yellow caps or something like that. I don't know.

"Q. It shoots caps?

"A. Not caps, like little red thing. Like a starter pistol or something like that."

The court erred in refusing to instruct the jury as requested on the lesser included offense of robbery in the second degree.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.