## STATE OF CONNECTICUT *v.* ANTHONY SMALL
### (SC 15305)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued February 20—officially released July 29, 1997

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan C. Benedict,* assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. Following a jury trial, the defendant, Anthony Small, was convicted of capital felony in viola-

tion of General Statutes § 53a-54b (8),[1] two counts of felony murder in violation of General Statutes § 53a-54c,[2] and one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2)[3] and 53a-48.[4] At sentencing, the trial court merged the defendant's felony murder convictions with his capital felony conviction and sentenced him on that count to life imprisonment without the possibility of release. In addition, the defendant was sentenced to

[1] General Statutes § 53a-54b provides in relevant part: "Capital felony. A person is guilty of a capital felony who is convicted of any of the following . . . (8) murder of two or more persons at the same time or in the course of a single transaction . . . ."

[2] General Statutes § 53a-54c provides: "Felony murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[3] General Statutes § 53a-134 provides in relevant part: "Robbery in the first degree: Class B felony. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[4] General Statutes § 53a-48 provides: "Conspiracy. Renunciation. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

fifteen years imprisonment on the conspiracy count, that sentence to run concurrently with the capital felony sentence, for a total effective sentence of life imprisonment without the possibility of release. On appeal,[5] the defendant claims the trial court improperly: (1) refused to dismiss the capital felony count because a capital felony conviction may not be predicated on a charge of felony murder; (2) charged the jury, over the defendant's objection, on the statutory affirmative defense to felony murder, even though the evidence did not support that defense and the defendant did not rely on that defense; (3) allowed the jury to hear evidence of the defendant's prior convictions; (4) denied the defendant's motion for a new trial after it was learned that one of the jurors had been the defendant's neighbor, knew the defendant and his family, and had not disclosed a sibling's narcotics arrest; and (5) charged the jury as to "reasonable doubt" in such a manner as to shift the burden of proof to the defendant. In addition, the defendant claims that his convictions for felony murder and conspiracy to commit robbery cannot stand if his coconspirator's convictions are reversed on appeal.[6] We reverse the judgment of the trial court as to the capital felony count, affirm the judgment of conviction on the remaining counts and remand the case for sentencing on the felony murder convictions.

[5] The defendant appealed to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[6] The defendant's coconspirator, Eric Amado, was convicted of two counts of murder, two counts of felony murder and capital felony. His convictions were upheld by the Appellate Court. *State* v. *Amado*, 42 Conn. App. 348, 680 A.2d 974 (1996). In response to Amado's petition for certification, this court remanded the case to the Appellate Court for reconsideration in light of *State* v. *Johnson*, 241 Conn. 702, 699 A.2d 57 (1997), which in turn relied on *State* v. *Harrell*, 238 Conn. 828, 681 A.2d 944 (1996). *State* v. *Amado*, 242 Conn. 906, 697 A.2d 368 (1997).

The jury reasonably could have found the following facts. In October, 1990, the defendant was involved in drug trafficking with his friend, Eric Amado. The defendant and Amado stored drugs at the West Haven apartment of Amado's girlfriend, Joanne Bailey. Bailey shared the apartment with Hope Vaughn, who had been dating the defendant. On October 19, 1990, Vaughn, who was upset over statements regarding her allegedly made by the defendant and Amado, decided that she would "put a stop to it." Vaughn telephoned a friend, Anthony Young, and asked him to come to the apartment she shared with Bailey. She then opened a window and knocked over some of the apartment's furnishings to make it appear as though the apartment had been burglarized. When Young arrived, Vaughn told him that she had some things to bring out and, after Young had backed his car, a red Toyota Celica, up to the door of the apartment building, she loaded two duffel bags and a small safe containing the drugs into the trunk of the car. The two then drove to Young's apartment in Bridgeport, where they were joined by Peter Hall, Vaughn's former boyfriend.

Meanwhile, the defendant and Amado returned to the West Haven apartment and discovered that the drugs were missing. The two men immediately began to search for the drugs and for whomever had taken them. They were joined in their search by Joanne Bailey, as well as by two associates, John "John-John" Wideman and David "Chico" Bailey.[7] During the course of their search, the group traveled to Stamford so that Amado could consult with a "voodoo man" of his acquaintance. The "voodoo man" told him that Vaughn had taken the drugs. Joanne Bailey informed Amado that Vaughn might be with a friend, Sarita Malloy, who lived in Bridgeport with Young. The group drove in two cars to Young's apartment, where they found Vaughn, Young

---

[7] David Bailey is not related to Joanne Bailey.

and Hall standing outside on the porch. At that time, they apparently did not suspect Young or Hall to have been involved in the theft. Joanne Bailey approached Vaughn and told her that Amado wanted to speak with her. Vaughn went over to the car where Amado was waiting, and when he ordered her to get into the car she complied. The group then returned to West Haven, where they spent the night. Throughout the night, Amado and the defendant, along with the other two men, questioned Vaughn as to her knowledge of the missing drugs. Amado threatened to shoot her and, at one point, the defendant tied a sock around Vaughn's head while David Bailey threatened her with a gun.

The next morning, Joanne Bailey asked neighbors whether they had seen anything suspicious. After being told by a neighbor that Vaughn had been seen loading bags into the trunk of a red Toyota, the defendant, Amado, Joanne Bailey, Wideman and David Bailey returned to Young's Bridgeport apartment. The men were armed with automatic or semiautomatic weapons, including Uzis.[8] The defendant carried an Uzi. Upon arriving at Young's apartment, Amado told Young that he had come for his "stuff." Young told him to calm down and to come inside the house, but Amado began yelling and then began shooting. Young and Hall were fatally wounded, and Joanne Bailey was shot in the back of her left thigh. The defendant, Amado, Wideman and David Bailey fled the scene. The defendant subsequently left the Bridgeport area, and moved to Queens, New York, where he remained until his arrest for the murders in 1994. Further facts will be provided as necessary.

.I

The defendant's first claim is that the trial court improperly denied his motion to dismiss the capital

---

[8] It is unclear from the record whether the weapons described by the witnesses were actual Uzis or merely large guns that the parties referred

felony count.[9] The defendant, relying on *State* v. *Harrell*, 238 Conn. 828, 839, 681 A.2d 944 (1996), argues that the capital felony count should have been dismissed because a capital felony conviction may be predicated only upon a conviction for intentional murder. This issue is controlled by our decision in *State* v. *Johnson*, 241 Conn. 702, 699 A.2d 57 (1997), and, in accordance with that decision, the defendant's capital felony conviction is vacated. Because the two counts of felony murder were merged with the capital felony count for sentencing purposes, the case is remanded for resentencing on the felony murder counts.

## II

The defendant's next claim is that the trial court improperly charged the jury as to the statutory affirmative defense to felony murder. Pursuant to § 53a-54c, if a defendant charged with felony murder was not the sole participant in the underlying crime, that defendant may claim as an affirmative defense that he or she: "(1) [d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." The defense

to as such. Nevertheless, testimony established that the guns were described as being approximately one and one-half to two feet in length.

[9] Although the defendant frames the issue as a denial of a motion to dismiss, the transcript indicates that the issue was presented to the court as a motion for judgment of acquittal. In his brief to this court, the defendant alternatively describes the request as a motion for mistrial, a motion for judgment of acquittal and a motion to dismiss. While there are procedural differences between these three types of motions that may in another case affect this court's analysis or conclusions, in this case the nomenclature is of no consequence.

is only effective if all four elements are met. The burden of proving these elements is on the defendant, who must prove their existence by a preponderance of the evidence. General Statutes § 53a-12 (b).

The following additional facts are relevant to our resolution of this claim. Prior to the defendant's testifying at trial, the trial court raised the issue as to whether the defendant would request a jury charge as to the affirmative defense set forth in § 53a-54c. At that time, the defendant stated that he did not plan to assert an affirmative defense. The state, however, indicated that it would request such a charge and, prior to final argument, gave the defendant a copy of its request for a jury charge as to the affirmative defense. As the defendant later told the court, he assumed that, based on his testimony, the state's request would be denied and, therefore, he did not object to or argue against the state's request at that time. Consequently, during its summation, the state referred to the existence of the affirmative defense. At that point, the defendant objected, arguing that reference to the affirmative defense was inappropriate because he had not asserted the defense and had not requested a charge on the defense. The trial court indicated that it was bound by the statute to give the affirmative defense charge as requested by the state.[10] Subsequently, over the defen-

---

[10] In the presence of the jury, the trial court and counsel engaged in the following discussion:

"[Lawrence Hopkins, Defense Counsel]: Your Honor, I'm going to object to that. . . . I don't know that there's [a request for an affirmative defense charge]—I don't know that one has ever been proffered and certainly not by me.

"[Jonathan Benedict, Assistant State's Attorney]: I thought we went through that at the time of the motions.

"The Court: Oh, I did.

"Mr. Hopkins: Well, I thought it was clear that the defense was asserting no such thing.

"The Court: You're not asserting it, but the statute is the law of this state, and it's the statute that has to control.

"Mr. Hopkins: I believe that even under the statute—see, I thought that was a legal issue that we would take up at some other time. But in any

dant's objection, the court charged the jury concerning the statutory affirmative defense to felony murder.

The defendant claims that, by giving the charge, the court deprived him of his constitutional right to a fair trial. Specifically, the defendant claims that: (1) the charge was improper because it was not supported by the evidence; and (2) it was improper for the court to grant the state's request for the affirmative defense charge over the defendant's objection because the giving of the charge effectively stripped him of his asserted defense of mere presence and relieved the state of its burden to prove the defendant's guilt. We conclude that there was sufficient evidence to support the charge, and that the giving of the charge did not effectively strip the defendant of any other defense, but, rather, provided him with further means to escape culpability if his asserted defense had failed. We need not decide at this time whether it was improper for the court to give

---

event, I'll let my objection stand for the record. . . . If this is going to be gone into at length, I disagree with the legal presumption here. I just don't think it should be a factor for the jury to consider unless the court charges it—

"The Court: I intend to charge on it.

"Mr. Hopkins: Well—

"Mr. Benedict: It's only the statute—

"Mr. Hopkins: Well, I'd object on both grounds in that case for the record at this point.

"Mr. Benedict: Now—

"The Court: I have to charge in accordance with the testimony in the case.

"Mr. Hopkins: I understand, Your Honor, but the—

"The Court: This man took the stand and testified. I have to charge in accordance with what he testified to.

"Mr. Hopkins: I don't disagree with that, Your Honor—

"The Court: Now, you can sit back and say 'I don't claim it.'

"Mr. Hopkins: I don't.

"The Court: But that's your problem. The evidence in the case requires that the court instruct the jury with the law that they will need to decide it. Based on what they and I have heard.

"Mr. Hopkins: I understand that.

"The Court: And I will do that."

The defendant did not object to the jury's presence at the time of the discussion, nor has he raised it as an issue on appeal.

the affirmative defense instruction over the defendant's objection because we conclude that, even if it was improper, the defendant was not harmed.[11]

## A

The defendant argues that the instruction regarding the affirmative defense was improper because it was not supported by the evidence. We disagree.[12]

We note that the consideration of the evidence in this case is complicated by the fact that it is the state that requested the instruction. In the vast majority of cases involving requests for instructions as to legally recognized defenses, including affirmative defenses, it is the defendant who has made the request. In those cases, we have held that the evidence must be considered in the light most favorable to the request. *State* v. *Adams*, 225 Conn. 270, 283, 623 A.2d 42 (1993); *State* v. *Fuller*, 199 Conn. 273, 279, 506 A.2d 556 (1986); *State* v. *Arroyo*, 181 Conn. 426, 430, 435 A.2d 967 (1980). With regard to the *amount* of evidence needed, when the requested instruction is for an affirmative defense, the evidence must be "sufficient . . . for a rational juror to find that all the elements of the defense are established by a preponderance of the evidence." *State* v. *Person*, 236 Conn. 342, 353, 673 A.2d 463 (1996). Although the rule in *Person* was formulated in response to a defense request for the instruction, the defendant

[11] The state, relying on this court's decisions in *State* v. *Person*, 236 Conn. 342, 673 A.2d 463 (1996), and *State* v. *Asherman*, 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), argues that because evidence had been presented to support the defense, the trial court was required to give the affirmative defense instruction. In response, the defendant claims that the holdings in *Person* and *Asherman* are applicable only to state of mind defenses.

[12] Although we do not reach the defendant's argument that the state may never request an affirmative defense over a defendant's objection, we do address his argument regarding the sufficiency of the evidence because had the evidence been insufficient, the charge would have been improper regardless of which party had requested it.

in this case has not pointed to any authority or reasoned distinction that would suggest that we apply a different standard to a request by the state.

The evidence supporting the affirmative defense may be summarized as follows. The defendant testified that he did not know what had been taken from the apartment shared by Vaughn and Joanne Bailey. He testified that he accompanied Amado throughout the day the drugs were taken and the next day solely to protect himself from suspicion. The defendant further testified that, when the group arrived at Young's apartment on the day of the shootings, he was not sure if anyone was armed. Although the defendant later stated that "Eric had been swingin' that gun around," the jury reasonably could have concluded that the defendant had been referring to the events of the previous night. Neither Vaughn nor Joanne Bailey could state with certainty that any of the men were armed on the morning of the shootings. The defendant claimed that he believed that Amado merely wanted to question Young and Hall about the missing property and further claimed that his only reason in accompanying Amado was to "listen to the whole scenario and make sure my name wasn't implicated in anything." We conclude that this testimony, when viewed in the light most favorable to the request, was sufficient to support the affirmative defense because a rational juror reasonably could have found that the defendant: (1) did not commit the murder; (2) was not armed; (3) had no reasonable ground to believe Amado was armed; and (4) had no reasonable ground to believe Amado intended to rob or shoot anyone.

B

The defendant next argues that by giving the affirmative defense instruction the trial court effectively deprived the defendant of his asserted defense of mere

presence,[13] misled the jury as to the defendant's burden of proof and burdened the defendant's right to testify by damaging his credibility as a witness. We disagree.

The defendant first claims that by giving the affirmative defense instruction, and by discussing the propriety of that instruction in the presence of the jury, the trial court supplanted his asserted defense of mere presence. We disagree.

It is settled law that a defendant who has produced evidence supporting a legally recognized defense is entitled, as a matter of law, to a theory of defense instruction, and that the denial of such an instruction is a violation of due process. *State v. Havican*, 213 Conn. 593, 597–98, 569 A.2d 1089 (1990). If, as the defendant claims, the charge regarding the statutory affirmative defense effectively prevented the jury from *considering* the defendant's asserted defense of mere presence, the state would be required to prove that the erroneous charge was harmless beyond a reasonable doubt. *State v. Gerardi*, 237 Conn. 348, 362, 677 A.2d 937 (1996). In the present case, however, the defendant acknowledges that the trial court did indeed instruct the jury on two occasions as to the "mere presence" defense, and the defendant has not claimed that those instructions were erroneous.[14] Furthermore, although the defendant

---

[13] "One who is present when a crime is committed but neither assists in its commission nor shares in the criminal intent of its perpetrator cannot be convicted as an accessory. Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it. *State v. Pundy*, 147 Conn. 7, 11, 156 A.2d 193 [1959]; *State v. Thomas*, 105 Conn. 757, 762, 136 A. 475 [1927]; *State v. Enanno*, 96 Conn. 420, 425, 114 A. 386 [1921]." *State v. Laffin*, 155 Conn. 531, 536, 235 A.2d 650 (1967).

[14] The court charged the jury as to the mere presence defense in the context of accessory liability: "[T]he state claims that the defendant is guilty of each of the crimes charged by virtue of being an accessory to each of

argues that the jury may have been led to believe that the affirmative defense was the defendant's only option, we note that the trial court and counsel engaged in debate over the propriety of the affirmative defense in the presence of the jury. Although the discussion, much like attorney summations, could not be considered as evidence, the jury nevertheless heard that the defendant was asserting a separate defense of mere presence and not admitting to any participation in the underlying crimes. Consequently, it is reasonable to assume that the defendant benefited from this colloquy by failing to object to the jury's presence.

The defendant next claims that, by giving the affirmative defense instruction over his objection, the trial court improperly shifted the burden of proof to the defendant, thereby depriving him of his constitutional right to a fair trial. Specifically, the defendant argues that by relying upon an affirmative defense, a defendant in effect admits to the underlying crimes and takes on the burden of proving mitigating circumstances. Therefore, the defendant asserts, it is inappropriate for the trial court to allow the state to relieve itself of its burden of proof by granting such a request when the defendant chooses not to assume that responsibility. The defendant further contends that, because he had offered testimony in support of his claim of mere presence that, if accepted by the jury, negated the affirmative defense, the affirmative defense instruction forced the defendant to prove facts contradicted by his own testimony, and thus damaged his credibility in front of the jury.

the crimes charged. . . . A person acting with the mental state required for commission of an offense who solicits, requests, commands, importunes, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct . . . .

\* \* \*

"To be an accessory to a crime, a person must be more than simply present as a companion at the commission of the crime. One must do something more than passively acquiesce in it or innocently do certain acts, which in fact did aid in the commission of the offense."

In response, the state argues that the defendant offered testimony supportive of the affirmative defense but chose not to request an instruction, with the hope that the jury, believing that the defendant was more than merely present but knowing that he was not the principal shooter, would, in its ignorance of the existence of the affirmative defense, acquit the defendant of the charges against him. The state argues that to allow the defendant to take such a gamble undermines the state's right to a thoughtful consideration by the jury of all the issues presented. Relying on *State* v. *Asherman*, 193 Conn. 695, 731, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), and *State* v. *Person*, supra, 236 Conn. 353, the state argues that when it comes to requesting an affirmative defense instruction, the defendant does not hold a monopoly.

We do not reach these claims, however, because we conclude that, under the circumstances of this case, the giving of the affirmative defense instruction in addition to instructing on the asserted defense of mere presence, even if improper, was harmless[15] because: (1) the state produced substantial evidence negating the defendant's claim of mere presence; and (2) in order for the jury to reach the merits of the affirmative defense, it first would have had to consider and reject any other defenses, including the defense of mere presence.

It was undisputed that the defendant did not shoot the victims and that he did not personally attempt to take any property from them. There was conflicting testimony, however, regarding the extent of the defendant's participation in the other activities leading up to the shootings. Although the defendant testified that he

---

[15] We so conclude even under the higher standard reserved for constitutional issues. See *State* v. *Gerardi*, supra, 237 Conn. 362 (when improper instruction infringes on defendant's constitutional right, state must prove instruction harmless beyond reasonable doubt).

was never armed, both Joanne Bailey and Vaughn testified that they believed that he had been carrying a gun, which Vaughn described as an Uzi. Additionally, Vaughn testified that the drugs taken from the apartment belonged to both Amado and the defendant. Vaughn further testified that the defendant had taken part in questioning and threatening her the night before the shootings. The defendant himself testified that Amado had a gun and that he was afraid of what might have happened to him or his family if Amado had thought he had taken the missing property. When asked to elaborate on his fears, he stated that, in his experience, such situations "most of the time [end] up in somebody gettin' killed."

In our view, the jury reasonably could have disregarded this testimony and found that the defendant merely had been present at the shootings. The jury therefore could have viewed the statutory affirmative defense as superfluous. Cf. *State* v. *Silveira*, 198 Conn. 454, 468, 503 A.2d 599 (1986) (defendant not prejudiced by jury consideration of superfluous defense). If, however, the jury determined that the defendant was not merely present at the scene, but, instead, was an active participant in the crime, the jury's consideration of the statutory affirmative defense could not have harmed the defendant. Rather, the statutory affirmative defense could only have helped the defendant by providing him with another opportunity to escape a jury finding of culpability for the murders. The jury would not have reached the issue of the affirmative defense had it not already determined that the defendant was a participant in the crime, and not merely present during its commission. Indeed, absent "mere presence," had it not been for the possible affirmative defense, the defendant would have had *no* defense.

This progression follows what this court has recognized to be the appropriate sequence of issue analysis

by the jury. *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993). The existence of an affirmative defense does not obviate the requirement that the state establish the defendant's guilt by proof beyond a reasonable doubt as to each essential element of the crime charged. Only after it had confronted the difficult task of resolving the issues surrounding the defendant's complicity in the robbery could the jury have moved on to the task of deciding whether he had satisfied the requirements of the affirmative defense. By giving the instructions as to mere presence and the statutory affirmative defense in the sequence that it did, the trial court fulfilled its "duty . . . to structure the jurors' deliberations in a manner that permits them to perform in an orderly fashion their fact-finding function . . . ." Id. Therefore, under the circumstances of this case, we cannot conclude that the instruction was harmful.

### III

The defendant next claims that the trial court improperly allowed evidence of his prior felony convictions to be presented to the jury. He argues that because the state was allowed to mention the nature of the felony convictions, which were drug related, the prejudicial effect of the evidence far outweighed its probative value. The state responds that the felony convictions were admitted properly for impeachment purposes and that the court's limiting instruction to the jury clearly indicated that the felony convictions were to be used only for the purpose of weighing the defendant's credibility. We agree with the state that the prior felony convictions were admissible for impeachment purposes and that the trial court did not abuse its discretion by allowing the state to inform the jury as to the nature of those convictions.

The following additional facts are necessary to analyze this claim. In April, 1987, the defendant was con-

victed of having a weapon in a motor vehicle and in May, 1989, the defendant pleaded guilty and was convicted on two counts of possession of narcotics with intent to sell. Prior to trial, the defendant submitted a motion in limine to exclude evidence of the three prior felony convictions. That motion was ordered over to the time of trial, at which time it was denied. The defendant testified at trial and, on direct examination by counsel, admitted to the prior felony convictions without disclosing their nature. On cross-examination, the defendant admitted that two of the felony convictions were narcotics related. In its summation, the state referred to the prior convictions, stating to the jury, "[a]s a witness here, the defendant has put into the record . . . his past record of three felony convictions. . . . Do you want to believe a person who's previously been convicted of three separate felonies? Has any other witness in this trial ever been convicted of a felony? I haven't heard." The trial court charged the jury that the defendant's testimony regarding the existence and nature of the prior felony convictions could be considered only insofar as those convictions reflected on his credibility as a witness.

"As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him. *State* v. *Sierra*, 213 Conn. 422, 428, 568 A.2d 448 (1990), quoting *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982). The trial court, however, may allow the state to mention specific prior convictions as evidence of a defendant's credibility provided such convictions carry a penalty of more than one year in prison and provided that their prejudicial effect does not far outweigh their probative value. *State* v. *Geyer*, 194 Conn. 1, 16, 480 A.2d 489 (1984). The trial court has wide discretion in this balancing determination and every reasonable presumption should be given in favor of the correctness of the court's

ruling . . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. *State* v. *Carr*, 172 Conn. 458, 464, 374 A.2d 1107 (1977).

"Three factors should be examined to determine whether a prior criminal conviction . . . has been [properly] admitted: (1) the extent to which admission is likely to prejudice the defendant's cause; (2) the significance of the prior crime as bearing on the defendant's truthfulness; and (3) the remoteness in time of the prior conviction. *State* v. *Geyer*, supra, [194 Conn.] 11; see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.21.6. . . .

"As to the first criterion, a high degree of prejudice can be expected when the prior crime is quite similar to the crime charged because of the jury's tendency to believe that if he did it before, he probably did it again. *State* v. *Carter*, [189 Conn. 631, 644, 458 A.2d 379 (1983)]. C. Tait & J. LaPlante, supra, § 7.21.6, p. 199. . . . Notwithstanding the lack of similarity between the crimes of possession of narcotics and [the crimes of felony murder and conspiracy to commit robbery], the defendant claims that [because the events of October 19 and 20, 1990, involved drugs] the mere mention of a prior drug-related offense is enough to cause unacceptable prejudice. While we agree that evidence of a prior narcotics felony conviction is certainly prejudicial to the defendant, evidence of any felony conviction is equally prejudicial. This generic prejudice is insufficient to render the disclosure of his prior conviction inadmissible." (Citation omitted; internal quotation marks omitted.) *State* v. *Rivera*, 221 Conn. 58, 72–74, 602 A.2d 571 (1992).

As to the second criterion, although a felony conviction for possession of narcotics does not reflect directly on the credibility of the defendant; *State* v. *Geyer*, supra, 194 Conn. 12–13; we note "the 'legislative judgment that

records of [all] crimes involving sentences of more than one year affect the credibility of a witness . . . .' *State v. Bitting*, 162 Conn. 1, 10, 291 A.2d 240 (1971)." *State v. Rivera*, supra, 221 Conn. 74.

Finally, neither party disputes that the narcotics convictions occurred a little over one year before the crimes at issue in the present case. Therefore, "the third prong of the test, which looks upon older convictions with less favor, is clearly satisfied." Id., 73. Applying these factors, we conclude that the trial court did not abuse its discretion in allowing the state to inquire into the nature of the prior felony convictions. The defendant put his credibility at stake by testifying, and the court made it clear in its instructions that the prior convictions were admitted for the sole purpose of testing that credibility.

## IV

The defendant's fourth claim is that the trial court improperly denied his motion for a new trial based on evidence that a juror had not revealed that she was a neighbor of the defendant, that she knew the defendant and his family, and that she had a sibling who had been arrested on drug charges. The state argues that the trial court did not abuse its discretion in denying the defendant's motion because he did not establish any misconduct on the part of the juror. We agree with the state.

The following additional facts are relevant to our resolution of this claim. On April 28, 1995, approximately one month after the verdict against the defendant was rendered, the defendant filed a motion for a new trial, claiming juror misconduct. Specifically, the defendant claimed that a female juror did not disclose during voir dire that she had been a neighbor of the defendant, had known the defendant's family and had a brother who had been arrested on a narcotics charge.

In response to the motion, the trial court held an eviden-
tiary hearing at which the juror and the defendant's
father testified. The juror testified that, although she
had lived on the same street as the defendant's family,
she and the defendant had not lived on that same street
at the same time. The juror further testified that she
had never met the defendant, and did not recognize
him as a neighbor. When asked about her brother's
narcotics arrest, she testified that she knew nothing
about it until she was contacted by someone from the
court at the time the defendant made his motion for a
new trial. The defendant's father then testified that he
had recognized the juror the first day that he attended
the trial, but was told by the defendant not to look at
the jury or mention anything about it.[16] The trial court
ruled from the bench that the juror's testimony was
more credible than that of the defendant's father and
that there was no misconduct warranting a new trial.
We conclude that the trial court did not abuse its discre-
tion in so ruling.

"A defendant is entitled to have an impartial jury
decide his case solely on the basis of the evidence
and arguments given them in the adversary arena after
proper instructions on the law by the court. . . . It is
well established, however, that not every incident of
juror misconduct requires a new trial. . . . The question
is whether or not the misconduct has prejudiced the
defendant to the extent that he has not received a fair
trial. . . . The defendant has been prejudiced if the
misbehavior is such to make it probable that the juror's
mind was influenced by it so as to render him or her
an unfair and prejudicial juror. . . . We have previously
held that, in cases where the trial court is directly impli-
cated in juror misconduct, the state bears the burden

---

[16] The defendant's father testified that when he told his son that he recog-
nized the juror, the defendant replied, " 'You don't know her, don't say
nothing. Don't look at them, none of that . . . .' "

of proving that misconduct was harmless error. . . .
Where, however, the trial court was in no way responsi-
ble for the juror misconduct . . . we have repeatedly
held that a defendant who offers proof of juror miscon-
duct bears the burden of proving that actual prejudice
resulted from that misconduct." (Citations omitted;
internal quotation marks omitted.) *State* v. *Newsome,*
238 Conn. 588, 627–28, 682 A.2d 972 (1996).

"Appellate review of a trial court's decision granting
or denying a motion for a new trial must take into
account the trial judge's superior opportunity to assess
the proceedings over which he or she has personally
presided. . . . [W]e have . . . accordingly confined
our role to a determination of whether there has been
an abuse of discretion. *State* v. *Hammond,* 221 Conn.
264, 269–70, 604 A.2d 793 (1992). Claims of juror miscon-
duct fall within this rule of limited review. *State* v.
*Asherman,* [supra, 193 Conn. 735–36]." (Internal quota-
tion marks omitted.) *State* v. *Ross,* 230 Conn. 183, 227–
28, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165,
115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995).

The trial court was not implicated in the defendant's
charge of juror misconduct and, therefore, the defen-
dant bore not only the burden of proving misconduct,
but also the burden of proving the prejudicial impact
of that misconduct. *State* v. *Newsome,* supra, 238 Conn.
628. Although the defendant offered evidence of mis-
conduct, which the court rejected as not credible, the
defendant failed to show how he was prejudiced by the
juror's alleged knowledge. Because the defendant failed
to prove either misconduct or prejudice, the trial court
acted well within its discretionary authority in denying
the motion for a new trial.

## V

The defendant's fifth claim is that the trial court, in
its instruction as to reasonable doubt, improperly

shifted the burden of proof to the defendant.[17] The defendant failed to object to the instruction at trial, and presents the issue to this court by invoking the appellate review authorized in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[18] The state contends that review is not appropriate because the issue was not properly preserved and because this court, on numerous occasions, has rejected these claims as not rising to the level

[17] The court gave the following instruction as to reasonable doubt: "The state can sustain the burden, resting on it, only if the evidence before you establishes the existence of every element constituting the crime charged beyond a reasonable doubt. . . . [W]e will use the word, concept, 'beyond a reasonable doubt' and I will attempt to explain or [give] meaning to that phrase for you. It has no technical or unusual meaning. You can arrive at the real meaning of that phrase by emphasizing the word 'reasonable.' A reasonable doubt is a doubt for which a valid reason can be assigned. It is more than a guess or a surmise. It is a doubt based upon reason and common sense. It is that kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt is proof of such a compelling and convincing nature that you would be willing to rely on it without hesitation in your most important affairs of life. A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or the lack of evidence in a case. It is such a doubt, as in the serious affairs which concern you in every day life, you would pay some heed.

"The law does not require proof beyond all doubt. The law does require that after hearing all the evidence, if there is something in the evidence or lack of evidence which leaves in the minds of the jury, as reasonable men and women, a reasonable doubt of the guilt of the accused, then the accused must be given the benefit of that doubt and [be] acquitted. Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis or [explanation] except guilt. It is proof that is consistent with guilt and inconsistent with any other reasonable conclusion.

"If you can, in reason, reconcile all the facts proven with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty."

[18] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." See *State* v. *Tomasko*, 238 Conn. 253, 270 n.14, 681 A.2d 922 (1996).

of a clear constitutional violation. See, e.g., *State* v. *Williams*, 231 Conn. 235, 254 n.22, 645 A.2d 999 (1994). The defendant concedes that the instruction as given by the trial court was in accordance with "this long line of precedent"; *State* v. *Ellis*, 232 Conn. 691, 705, 657 A.2d 1099 (1995); but urges this court to reconsider that precedent. We decline the defendant's invitation, and reject his claim as not satisfying *Golding*'s second and third requirements because, when viewed in the context of the charge as a whole, the court's instruction as to reasonable doubt was in accord with precedent and did not constitute a clear violation of the defendant's fundamental constitutional rights nor deprive him of a fair trial. *State* v. *Golding*, supra, 239–40.

VI

The defendant's sixth and final claim is that his convictions necessarily are tied to those of Eric Amado, and, therefore, should Amado succeed on his appeal, the defendant's convictions must be reversed. We disagree.

The defendant was charged with capital felony, felony murder and conspiracy to commit robbery in the first degree. Amado was the principal actor in the underlying crimes, and the defendant was charged under the theory of accomplice liability. Amado was not charged with the robbery, or with conspiracy to commit robbery. The defendant does not argue that in order for him to be convicted of conspiracy, Amado must also have been charged with, and convicted of, robbery and conspiracy. Rather, the defendant claims that his complicity is pinned to Amado's culpability. Specifically, the defendant argues that Amado was acting in self-defense, meaning that Amado's actions were justified and, consequently, there was no crime, and by extension no conspiracy, committed. The defendant concedes that Amado did not succeed with this defense at trial, but

argues that should Amado succeed on appeal his own convictions must necessarily fall. In essence, the defendant requests this court to reserve judgment on the propriety of the defendant's convictions until Amado has completed his own appeal process. The state contends that, even if this issue were preserved properly,[19] the circumstances of Amado's appeal are such that the results would have no effect on the defendant's convictions. We agree with the state.

Amado's appeal as presented to the Appellate Court went only to the issue of self-defense. *State* v. *Amado*, 42 Conn. App. 348, 350, 680 A.2d 974 (1996). In upholding Amado's convictions, the Appellate Court concluded that self-defense is not a legally cognizable defense to capital felony or felony murder when the underlying crime is robbery. Id., 362. Upon certification to this court, we remanded the appeal to the Appellate Court to reconsider only the issue of capital felony. *State* v. *Amado*, 242 Conn. 906, 697 A.2d 368 (1997); see footnote 6 of this opinion. Consequently, regardless of the outcome of Amado's appeal, the fact of the underlying crime of robbery remains unchanged, and the defendant's convictions remain unaffected.

The judgment is reversed in part and the case is remanded to the trial court with direction to vacate the capital felony conviction and to impose sentence on the felony murder convictions.

In this opinion CALLAHAN, C. J., and NORCOTT and PALMER, Js., concurred.

---

[19] The defendant did not raise this issue at trial, and on appeal invokes *State* v. *Golding*, supra, 213 Conn. 239–40, and Practice Book § 4185 (now § 4061). At the time of this appeal, § 4185 (which has since been repealed effective September 3, 1996, and incorporated in § 4061) provided that the court on appeal could consider claims that arose subsequent to trial. The defendant argues that the claim is reviewable because it is tied to events occurring outside of the defendant's trial, specifically, Amado's appeal.

BORDEN, J., concurring. I agree with and join parts I, III, IV, V and VI of the majority opinion. With respect to part II, however, I agree with the result but not with the analysis.

In part II, the majority finds it unnecessary to decide whether it was improper for the trial court to instruct the jury, over the defendant's objection, on the affirmative defense under General Statutes § 53a-54c because, the majority concludes, "even if it was improper, the defendant was not harmed." In my view, the trial court was correct in so instructing the jury because, as the majority correctly notes, there was sufficient evidence to support the affirmative defense. I reach this conclusion based on our precedents and for reasons that, in my view, go to the heart of the criminal trial process.

In *State* v. *Asherman*, 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), the defendant was charged with murder. We held that it was proper for the trial court to instruct the jury, at the state's request and over the defendant's objection, on the lesser included offense of manslaughter in the first degree predicated on the defendant's "having committed the homicide under circumstances showing extreme emotional disturbance." Id., 729. Extreme emotional disturbance was then, as it is now, an affirmative defense upon which the burden of persuasion rests on the defendant. Id., 731. Prior to and consistent with *Asherman*, we had held that "an instruction on a homicide of a lesser degree than that charged is appropriate, whether requested by the state or the defendant, or given by the court sua sponte," where there is evidence to support such a charge. *State* v. *Rodriguez*, 180 Conn. 382, 408, 429 A.2d 919 (1980).

In *State* v. *Person*, 236 Conn. 342, 673 A.2d 463 (1996), we held that the defendant, who was charged with mur-

der, was entitled to an instruction on the affirmative defense of extreme emotional disturbance, if there was evidence to support it, despite the fact that "the defendant's trial testimony had contradicted such [an affirmative] defense." Id., 343, 356. Consistent with *Person*, we have held that the defendant is entitled to a jury instruction on inconsistent defenses, including a theory of defense that his testimony squarely contradicts, where there is evidence that supports the inconsistent defenses. *State* v. *Harris*, 189 Conn. 268, 273, 455 A.2d 342 (1983).

These precedents compel the conclusion that the trial court may present to the jury an affirmative defense that is supported by the evidence, even where the defendant objects thereto. It is true, as the majority notes, that both *Asherman* and *Person*, on their specific facts, involved the mental state affirmative defense of extreme emotional disturbance. Those cases are not limited, however, to mental state issues. In *Asherman*, for example, we reasoned more broadly that simply because the defendant had the right to rely on the mitigating circumstance of extreme emotional disturbance "does not mean that by his contrary election he may also circumscribe the homicide offenses which the jury may consider." *State* v. *Asherman*, supra, 193 Conn. 732. Similarly, in *State* v. *Person*, supra, 236 Conn. 349–50, we relied on cases involving inconsistent defenses that did not involve mental states, such as *State* v. *Harris*, supra, 189 Conn. 271–72 (alibi and allegation that gun was toy), and *Mathews* v. *United States*, 485 U.S. 58, 62, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988) (entrapment and denial of commission of crime).

It is true that in both *Asherman* and *Person* we referred to the often elusive differences among states of mind as part of the basis of our rulings. There are other factual differences, however, that may be equally elusive, depending on the state of the evidence, and

that may result in the applicability of an affirmative defense. Indeed, in the present case the difference between the defendant's "mere presence" at the underlying felony and the evidence supporting the affirmative defense to the charge of felony murder is just such a difference. There is, therefore, no compelling reason to confine the *Asherman* and *Person* principle to mental state issues.

Moreover, those cases are not limited to mental state issues because they are consistent with the fundamental principles underlying the purposes of instructing the jury—"to assist the jury in applying the law correctly to the facts which they might find to be established . . . [and] to call the attention of the members of the jury, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case." (Citations omitted; internal quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 510, 659 A.2d 1194 (1995). It is axiomatic that, in finding those facts to which it is correct to apply the law so as to reach a right decision in a case, the jury is required to take into account all of the evidence presented to it. If the court were to be precluded from instructing the jury on an affirmative defense that the evidence supports, solely because the defendant objects thereto, then the court would be required: (1) to direct the jury to take into account only *some*, but not all, of the evidence presented to it; (2) to assist the jury in applying the law *incorrectly*, rather than correctly, to the facts that the jury might find; and thus (3) to guide them to a *wrong*, rather than to a right, decision in the case. These precedents, in my view, rest on the notion that it is the jury that is responsible for sifting through conflicting evidence and determining where the truth lies, and that process should not be distorted by the trial court's own view of the evidence or by the strategic choices made by either the state or the defendant.

This brings me, then, to the more fundamental reasons why the trial court was correct in instructing the jury on the affirmative defense, despite the defendant's objection. The purpose of the criminal trial process is to convict the guilty and acquit the innocent. *State* v. *Daugaard*, 231 Conn. 195, 212, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). It is not a game of sport. Although both the state and the defendant are entitled to make their strategic choices in how they present their cases or defenses, including how they argue their cases to the jury, there is nothing in law, policy or reason requiring that, when the case is ultimately presented to the jury by the court, a rule of law that is called to the court's attention and that otherwise applies to the facts of the case, as disclosed by the evidence, must nonetheless yield to those strategic choices. To hold otherwise would be to distort the fact-finding process, to permit strategy to trump law, and to make sport prevail over the purpose of the trial.

BERDON, J., concurring and dissenting. The majority opinion leaves open the issue of whether the state can foist an affirmative defense upon a defendant, the very assertion of which implicates him in the crime, when his defense is mere presence (that is, he was present at the scene but did not participate in the commission of the crime). I would reach that issue because, in my view, having allowed the state to argue that the defendant failed to prove an affirmative defense that he did not assert, combined with the trial court's instruction on that affirmative defense, created a highly prejudicial situation requiring that we grant the defendant a new trial.

In this case, the defendant, Anthony Small, testified that he was at the scene when the victims were shot, but he denied participating in the incident. At the request of the state, and over the objection of the defendant, the

trial court instructed the jury on the affirmative defense to felony murder—that is, in this case, although the deaths occurred during the commission of a robbery, the defendant "(1) [d]id not commit the homicidal act[s] or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." General Statutes § 53a-54c.

The entire scenario in which this affirmative defense was played out before the jury was highly prejudicial. The state's strategy was to make it appear that the defendant's defense to the felony murders was not that he did not participate in the robbery, the underlying crime for the felony murders, but that he relied upon the affirmative defense to felony murder for which he had the burden of proof. The state could then argue to the jury, as it did, that although the defendant relied on the affirmative defense, he did not sustain his burden of proving that defense, a defense the defendant never asserted in the first place. This strategy enabled the state to gain the tactical advantage of placing the defendant in the light of having participated in the robbery, but that he was seeking to avoid the consequences of the deaths that resulted by asserting the affirmative defense. And, of course, the affirmative defense would fail by necessity because there was insufficient evidence to support it.

I realize that in State v. Asherman, 193 Conn. 695, 729–33, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), this court held, over the objection of the defendant, that if there was sufficient evidence to support a less culpable mental

state, the trial court, notwithstanding the defendant's objection, could instruct the jury on a crime supported by that mental state. In *Asherman*, that less culpable mental state was not an affirmative defense, but, rather, it was a lesser included offense. Instructing on a lesser included offense, for which the state has the burden of proof, is a far cry from instructing on an affirmative defense for which the defendant carries the burden. Instructing on such an affirmative defense implants in the minds of the jurors that the defendant committed the underlying crime—in this case robbery—but sought to avoid the consequences that would result from felony murder. Cf. *United States* v. *Johnson*, 968 F.2d 208, 213–14 (2d Cir.), cert. denied, 506 U.S. 964, 113 S. Ct. 436, 121 L. Ed. 2d 355 (1992) ("[A]n affirmative defense may not, in operation, negate an element of the crime which the government is required to prove; otherwise, there would be too great a risk that a jury, by placing undue emphasis on the affirmative defense, might presume that the government had already met its burden of proof. Such a presumption would, without question, violate due process.").[1]

---

[1] In his concurring opinion, Justice Borden relies on *Asherman* to support the conclusion that the jury can be instructed on an affirmative defense with respect to felony murder, without the defense being sought by the defendant. *Asherman*, however, clearly draws the same distinction between an affirmative defense and a lesser included offense, as I do in this opinion. See *State* v. *Asherman*, supra, 193 Conn. 731 ("Under General Statutes § 53a-55 (a) (2) manslaughter predicated on the mitigating circumstance of extreme emotional disturbance is a lesser included offense of murder. . . . Under [General Statutes (Rev. to 1983)] § 53a-45 (c) the 'jury before which any person indicted for murder is tried may find him guilty of homicide in a lesser degree than that charged.' It follows that in any murder prosecution the issue of the lesser included offense of manslaughter under § 53a-55 (a) (2) may be raised either by the *defendant* by way of an affirmative defense *or* by the *state* where it is warranted by the evidence." [Citation omitted; emphasis added.]).

Justice Borden also relies on *State* v. *Person*, 236 Conn. 342, 673 A.2d 463 (1996), to support his claim that it is proper for a trial judge to instruct the jury on an affirmative defense over the objection of the defendant. That reliance ignores the important distinction that in *Person* it was the defendant who requested the instruction on the inconsistent defense. Id., 344.

In my view, the giving of an instruction on an affirmative defense over the objection of the defendant requires reversal of the defendant's conviction. Furthermore, seeking such an instruction is an unfair tactic employed by the state that this court should not condone.

I agree with part I of the majority opinion that felony murder cannot be a predicate for a capital felony conviction. I dissent with respect to part II and would reverse the conviction and order a new trial.

MCDONALD, J., concurring and dissenting. I dissent from the majority's holding that, in accordance with *State* v. *Johnson*, 241 Conn. 702, 699 A.2d 57 (1997), and *State* v. *Harrell*, 238 Conn. 828, 681 A.2d 944 (1996), the defendant, Anthony Small, must be acquitted of capital felony.[1] I do so for the reasons set forth in my dissent in *State* v. *Johnson*, supra, 721.

In this case, there is no crime of arson murder, which may be punished by life imprisonment without parole and may be proved by reckless conduct, as in *Harrell*. Here, also, the jury did not impose the death penalty, which further distinguishes this case from *Harrell*. This case does involve an attempted robbery by drug dealers armed with machine guns forcibly taking cocaine from other drug dealers. The result was that two people were

In addition, the majority, relying on *State* v. *Sawyer*, 227 Conn. 566, 579, 630 A.2d 1064 (1993), concludes that even if the trial court improperly instructed the jury on the affirmative defense to felony murder, that instruction was harmless because "[o]nly after [the jury] had confronted the difficult task of resolving the issues surrounding the defendant's complicity in the robbery could the jury have moved on to the task of deciding whether [the defendant] had satisfied the requirements of the affirmative defense [to felony murder]." In *Sawyer*, this court held that a jury must be instructed to first confront and unanimously complete the task of deciding the guilt or innocence of the defendant with respect to the charged offense before it can consider any lesser included offenses that the trial court offers in its instructions. Id., 583. The majority, however, also commits the error of not distinguishing between lesser included offenses and affirmative defenses.

[1] I agree with and join in parts III, IV, V and VI of the majority opinion.

murdered in their home. The evidence showed that the defendant was then armed with an Uzi, a handheld machine gun.

The question here presented is whether a person who participates in a dangerous or violent felony resulting in multiple deaths may suffer the penalty for capital felony. I see no reason why this court should alter the plain intent of the General Assembly to impose greater penalties than those available for murder when two or more persons are murdered at the same time or in the course of a single transaction.[2]

As in *Johnson*, the majority in this case, I regret to say, ignores reality and the need for public security. This decision forbids the imposition in the future of a life sentence without parole for monstrous crimes because killers and the other participants had other crimes as their objective when they killed multiple victims or participated in dangerous criminal activity.

I respectfully dissent from part I of the majority opinion.

I concur with Justice Borden and the majority in part II of the majority opinion.

The jury instruction on mere presence is the mirror of the instruction given here that the state must prove that the defendant had the requisite intent in order to be convicted as an accessory under General Statutes § 53a-8. The law of accessorial liability under § 53a-8 applied here to a finding of guilt as to the underlying

---

[2] The deaths of three guards during an armed robbery of an armored truck was the catalyst for the enactment of the multiple murder capital felony statute. 23 S. Proc., Pt. 8, 1980 Sess., pp. 2326–28, remarks of Senator Howard T. Owens, Jr.; id., pp. 2342–43, remarks of Senator Louis S. Cutillo; id., p. 2346, remarks of Senator William J. Sullivan; see also *State* v. *Couture*, 218 Conn. 309, 589 A.2d 343 (1991); *State* v. *Pelletier*, 209 Conn. 564, 552 A.2d 805 (1989).

felony, one element of felony murder. General Statutes § 53a-54c. The felony murder statute itself, however, establishes a distinct principle of accessorial liability for murder on the part of participants who did not themselves cause the death of someone during commission of the underlying felony, and it does so apart from § 53a-8. The felony murder statute also establishes a distinct defense that the defendant must prove and that requires proof of four elements not found within the concept of mere presence. Instructing a jury, with respect to felony murder, that mere presence is not sufficient to convict fails to inform the jury as to the affirmative defense distinctly applicable to felony murder. Since the defendant here requested and received the benefit of the mere presence instruction as to the underlying felony, the court was correct in further instructing the jury as to the distinct accessorial defense applicable to felony murder.

I should add that I also agree with the majority that in these circumstances the charge did the defendant no harm.