## STATE OF CONNECTICUT *v.* SADI VIDRO
### (AC 21409)

Schaller, Dranginis and Daly, Js.

Argued February 18—officially released July 16, 2002

*Joseph Visone*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Jeffrey Doskos*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Sadi Vidro, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b),[2] criminal trespass in the third degree in violation of General Stat-

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . possesses with the intent to sell . . . any narcotic substance . . . and who is not at the time of such action a drug-dependent person . . . shall be imprisoned . . . ."

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section . . . 21a-278 by . . . possessing with the intent to sell . . . any controlled substance in or on, or within one thousand five hundred feet of . . . a public housing project . . . shall be imprisoned . . . ."

utes § 53a-109 (a)[3] and escape from custody in violation of General Statutes § 53a-171 (a).[4] The defendant claims that the trial court improperly (1) permitted the state to offer evidence of his parole status, (2) failed to conduct a proper polling of the jury and (3) allowed into evidence the prior consistent statement of a police officer. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the evening of October 22, 1999, Officers Elvin Rivera and Huey Young of the New Haven police department were on foot patrol in full uniform in the Quinnipiac Housing Complex. At 10 p.m., they walked to Dover Street, which is known as an area where narcotics transactions occur, and positioned themselves in the foyer of a building for surveillance of the well illuminated street. They observed the defendant standing approximately forty feet away on the sidewalk. A white Ford Escort drove up to the curb, and the defendant approached the driver's side of the car. The officers then observed the defendant withdraw a plastic sandwich bag from his right jacket pocket, extract a smaller object from the bag and hand that object to the driver of the car. The driver, in return, handed something to the defendant that appeared to be money. The car then drove away, and the defendant started to walk toward the officers' vantage point. The officers left their surveillance point and approached the defendant, who dropped the sandwich bag as he continued to walk toward the officers.

---

[3] General Statutes § 53a-109 (a) provides in relevant part: "A person is guilty of criminal trespass in the third degree when, knowing that he is not licensed or privileged to do so: (1) He enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders . . . ."

[4] General Statutes § 53a-171 (a) provides in relevant part: "A person is guilty of escape from custody if such person (1) escapes from custody . . . ."

Rivera confronted the defendant and ascertained that he did not live in the housing complex or know anyone who lived there. Each officer took the defendant by an arm and placed him against the wall of a building. Rivera patted him down for weapons and requested some identification. The defendant stated that his name was Sadi Vidro and that he had identification in his wallet. Rivera removed the defendant's wallet from his pocket and found an operator's license, a bank card and some credit cards bearing the name Sadi Vidro. The photograph on the license resembled the person in custody. Rivera then handed the license to Young, who also compared the photograph on it with the defendant's features. Both officers testified that the person in custody and the person in the photograph were the same.

Rivera took out his handcuffs and informed the defendant that he was under arrest for trespassing. "No trespassing" signs were posted on the property. The defendant wrenched himself free and fled from the officers. The handcuffs, the wallet and Young's flashlight fell to the ground while the officers pursued the defendant. In the course of the pursuit, Rivera called the police dispatcher, indicated that they were engaged in a foot pursuit and gave a description of the fugitive and the direction in which he was heading. When the officers lost sight of the defendant, they returned to the scene and retrieved the handcuffs, wallet and flashlight, along with the plastic sandwich bag dropped by the defendant. Rivera opened the sandwich bag and found nineteen small plastic bags that contained white powder. He turned the bags over to a third police officer who field tested the contents of one of the bags, which tested positive for cocaine. Upon checking the wallet, Rivera found the business card of John Kelly, a parole officer with the department of correction. Rivera then called the telephone number on the card and left a

message on Kelly's answering machine, relating the events that had transpired.

On Monday, October 25, Kelly called Rivera and informed him that he had gone to the defendant's home, had arrested him for violation of his parole conditions and had placed him in the New Haven police lockup, and he requested that Rivera go to the lockup to identify the defendant. Rivera proceeded to the New Haven lockup where he saw the defendant in the holding cell. Rivera recognized the defendant as the individual he had encountered on the evening of October 22, and the defendant was arrested.

At trial, the defendant maintained that he had lost his wallet sometime between 8 p.m. and 10 p.m. on the evening in question, that he had reported it missing at 11:26 p.m. and that he was at home that evening with his sister. The jury found the defendant guilty on all four counts. Thereafter, the court sentenced the defendant to a total effective sentence of eighteen years. This appeal followed. Additional facts will be provided as necessary.

I

The defendant first claims that the court improperly permitted the state to offer evidence of his parole status. Specifically, he argues that the admission of his parole status violated his due process right to a fair trial under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the constitution of Connecticut.[5] The state argues that the evidence

[5] We note at the outset that, despite the defendant's framing of the issue as a deprivation of his constitutional due process rights to a fair trial, "a claim of an erroneous evidentiary ruling . . . does not implicate the constitution." (Internal quotation marks omitted.) *State* v. *Walsh*, 52 Conn. App. 708, 720, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999). We therefore decline to address the defendant's claim under a constitutional standard and, instead, evaluate it under the abuse of discretion standard of review normally applicable to evidentiary rulings. See *State* v. *Small*, 242 Conn. 93, 109–10, 700 A.2d 617 (1997).

was properly admitted because it showed the investigative efforts of the police and the sequence of events leading to the defendant's arrest. We agree with the state.

The following additional facts are necessary for our resolution of this claim. On July 31, 2000, the defendant filed a motion in limine to preclude the state from referring to his parole status in its case-in-chief. At the hearing on the motion, the defendant argued that the probative value of his parole status was outweighed by the prejudicial impact that this information would have on the jury. The defendant argued that the fact that Kelly was a parole officer could be redacted from the testimony without harm to the state's case. The state claimed that the defendant's parole status was an essential fact showing how the defendant was eventually apprehended and ended up at the New Haven lockup for identification. The state argued that omitting this information would lead the jury to speculate as to how the defendant was found. The court denied the defendant's motion, and during the trial both the fact that the defendant's wallet contained the business card of his parole officer and Kelly's involvement in the apprehension of the defendant were admitted into evidence.

"As a general proposition, evidence of guilt of other crimes, because of its prejudicial nature, is inadmissible to prove that a defendant is guilty of the crimes with which he is charged. . . . Such evidence is admissible for other purposes, however, such as when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity, to name some exceptions to the rule. . . . The trial judge, however, must determine in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency." (Citations omitted.) *State* v. *Turcio*, 178 Conn. 116, 129, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661,

62 L. Ed. 2d 642 (1980). "The trial court has wide discretion in this balancing determination and every reasonable presumption should be given in favor of the correctness of the court's ruling . . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Small*, 242 Conn. 93, 109–10, 700 A.2d 617 (1997); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 35, p. 159.

In addition to the exceptions cited previously, the state may also present evidence to show the investigative efforts made by the police and the sequence of events as they unfolded, even if that evidence would be inadmissible if offered for a different reason. See *State* v. *Dudley*, 68 Conn. App. 405, 423, 791 A.2d 661 (court properly admitted evidence of defendant's exercise of rights to counsel and to remain silent), cert. denied, 260 Conn. 916, 797 A.2d 515 (2002).

We conclude that the trial court did not abuse its discretion in admitting the defendant's parole status into evidence. Evidence of the defendant's parole status was not admitted to raise the inference that the defendant was more likely to have committed the crimes he was charged with because he was on parole for a previous crime or crimes. Rather, that evidence was introduced precisely to show the investigative efforts of the police and the sequence of events leading to the defendant's arrest as they unfolded. The testimony revealing the defendant's parole status merely helped to explain to the jury those events that led to the defendant's detention and subsequent identification at the New Haven police lockup. The omission of this information would have left important gaps in the chronology of the case and left the jury to speculate about the investigative efforts undertaken by the police. Moreover, the court instructed the jury, as the defendant requested, on the limited use of the evidence to mini-

mize its prejudicial impact. See *State* v. *Madore*, 45 Conn. App. 512, 523, 696 A.2d 1293 (1997) (given inherently imprecise nature of balancing process and limiting instructions given to jury, court did not abuse discretion by denying defendant's motion in limine and admitting evidence of prior misconduct). In the absence of a fair indication to the contrary, the jury is presumed to have followed the instructions of the court. *State* v. *Rodriguez*, 210 Conn. 315, 333, 554 A.2d 1080 (1989); 1 B. Holden & J. Daly, supra, § 35, p. 155. Accordingly, the court did not abuse its discretion in permitting the state to introduce into evidence the defendant's parole status.

II

The defendant next claims that the trial court improperly failed to poll each juror individually and privately. We disagree.

At the defendant's request, following the delivery of the jury's verdict, the court, addressing each count in turn, inquired separately of each juror, in the presence of the other members of the jury, whether he or she agreed with the verdict. The defendant concedes that he did not object when the court polled each juror in the presence of the entire panel and now seeks review of his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of

any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id., 239–40. "The first two prongs of *Golding* address the reviewability of the claim, and the last two involve the merits of the claim." (Internal quotation marks omitted.) *State* v. *Silva*, 65 Conn. App. 234, 240, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001).

We conclude that the defendant's claim does not warrant review pursuant to *Golding* because it fails to allege a harm of constitutional magnitude. Our Supreme Court has stated that the right to poll the jury is not of constitutional dimension. *State* v. *Pare*, 253 Conn. 611, 623, 755 A.2d 180 (2000). Accordingly, we decline to review the defendant's claim.[6]

### III

The defendant next claims that the court improperly admitted into evidence the prior consistent statement of a police officer. Specifically, he argues that the court improperly admitted into evidence the police dispatch tape recording of Rivera's description of the person whom he had seen selling drugs and who had fled from him.[7] The defendant argues that the tape recording is hearsay and does not come within any exception to the hearsay rule. The state agrees that the recording constitutes hearsay evidence but claims that it is admissible as a spontaneous utterance. We need not decide if the taped dispatch call falls within any of the excep-

---

[6] The defendant claims that the rule requires individual polling and that such polling should be done privately. He cites no authority, nor could we find any, that supports this claim even if it was reviewable.

[7] Again, the defendant has incorrectly alleged a constitutional violation based on the court's evidentiary ruling. Accordingly, we review the defendant's claim under an abuse of discretion standard. See footnote 5.

tions to the hearsay rule because we conclude that the admission of the tape, even if improper, was harmless.

To establish the identification of the defendant, the state sought to introduce the audiotape of the police dispatch call placed by Rivera on the evening of October 22, 1999. The tape consisted of Rivera's telephone call to the dispatch operator, while he was engaged in a foot chase, describing the fleeing suspect. The defendant objected to the introduction of the audiotape on the ground that it constituted hearsay and was not admissible pursuant to any exception to the hearsay rule. The court overruled the objection and allowed the tape into evidence.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . Additionally, it is well settled that even if the evidence was improperly admitted, the respondent must also establish that the ruling was harmful and likely to affect the result of the trial." (Citation omitted; internal quotation marks omitted.) *In re Latifa K.*, 67 Conn. App. 742, 751–52, 789 A.2d 1024 (2002).

"In nonconstitutional claims, the defendant has the burden of demonstrating the harmfulness of the claimed error. . . . He must show that it is more probable than not that the claimed error affected the verdict. . . . [A] judgment need not be reversed merely because inadmissible evidence has been admitted, if permissible evidence of the same effect has also been placed before the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Walsh*, 52 Conn. App. 708, 720, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999).

At trial, Rivera and Young both testified as to the physical description of the suspect whom they observed

selling drugs and who fled from them. The descriptions provided during trial matched the one contained on the police dispatch tape. Accordingly, even if the police dispatch tape was admitted improperly, it was merely cumulative of other properly admitted evidence. In sum, the defendant has failed to show that it is more probable than not that the admission of the tape, even if improper, affected the outcome of the trial.

The judgment is affirmed.

In this opinion the other judges concurred.