## SADI VIDRO *v.* COMMISSIONER OF CORRECTION
## (AC 27594)

Gruendel, Harper and Mihalakos, Js.

Argued September 10, 2007—officially released January 22, 2008

*Kathryn Steadman*, special public defender, for the appellant (petitioner).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

MIHALAKOS, J. The petitioner, Sadi Vidro, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his claim that counsel at his criminal trial was ineffective. We affirm the judgment of the habeas court.

The relevant facts are set forth in the opinion in the petitioner's direct appeal. See *State* v. *Vidro*, 71 Conn. App. 89, 800 A.2d 661, cert. denied, 261 Conn. 935, 806 A.2d 1070 (2002). "During the evening of October 22, 1999, Officers Elvin Rivera and Huey Young of the New Haven police department were on foot patrol in full uniform in the Quinnipiac Housing Complex. At 10 p.m., they walked to Dover Street, which is known as an area where narcotics transactions occur, and positioned themselves in the foyer of a building for surveillance of the well illuminated street. They observed the [petitioner] standing approximately forty feet away on the sidewalk. A white Ford Escort drove up to the curb, and the [petitioner] approached the driver's side of the car. The officers then observed the [petitioner] withdraw a plastic sandwich bag from his right jacket pocket, extract a smaller object from the bag and hand that object to the driver of the car. The driver, in return, handed something to the [petitioner] that appeared to be money. The car then drove away, and the [petitioner] started to walk toward the officers' vantage point. The officers left their surveillance point and approached the [petitioner], who dropped the sandwich bag as he continued to walk toward the officers.

"Rivera confronted the [petitioner] and ascertained that he did not live in the housing complex or know anyone who lived there. Each officer took the [petitioner] by an arm and placed him against the wall of a building. Rivera patted him down for weapons and

requested some identification. The [petitioner] stated that his name was Sadi Vidro and that he had identification in his wallet. Rivera removed the [petitioner's] wallet from his pocket and found an operator's license, a bank card and some credit cards bearing the name Sadi Vidro. The photograph on the license resembled the person in custody. Rivera then handed the license to Young, who also compared the photograph on it with the [petitioner's] features. Both officers testified that the person in custody and the person in the photograph were the same.

"Rivera took out his handcuffs and informed the [petitioner] that he was under arrest for trespassing. 'No trespassing' signs were posted on the property. The [petitioner] wrenched himself free and fled from the officers. The handcuffs, the wallet and Young's flashlight fell to the ground while the officers pursued the [petitioner]. In the course of the pursuit, Rivera called the police dispatcher, indicated that they were engaged in a foot pursuit and gave a description of the fugitive and the direction in which he was heading. When the officers lost sight of the [petitioner], they returned to the scene and retrieved the handcuffs, wallet and flashlight, along with the plastic sandwich bag dropped by the [petitioner]. Rivera opened the sandwich bag and found nineteen small plastic bags that contained white powder. He turned the bags over to a third police officer who field tested the contents of one of the bags, which tested positive for cocaine. Upon checking the wallet, Rivera found the business card of John Kelly, a parole officer with the department of correction. Rivera then called the telephone number on the card and left a message on Kelly's answering machine, relating the events that had transpired.

"On Monday, October 25, Kelly called Rivera and informed him that he had gone to the [petitioner's]

home, had arrested him for violation of his parole conditions and had placed him in the New Haven police lockup, and he requested that Rivera go to the lockup to identify the [petitioner]. Rivera proceeded to the New Haven lockup where he saw the [petitioner] in the holding cell. Rivera recognized the [petitioner] as the individual he had encountered on the evening of October 22, and the [petitioner] was arrested." Id., 91–93.

The petitioner subsequently was charged with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b), criminal trespass in the third degree in violation of General Statutes § 53a-109 (a) and escape from custody in violation of General Statutes § 53a-171. At his jury trial, the petitioner raised an alibi defense, claiming that he was on the telephone with his girlfriend at the time of the alleged incident and that he had lost his wallet earlier in the evening.[1] Following trial, the jury found the petitioner guilty of all charges. The court sentenced the petitioner to fifteen years imprisonment for violation of § 21a-278 (b), three years for violation of § 21a-278a (b), to be served consecutively to the sentence for violation of § 21a-278 (b), three months to be served concurrently for criminal trespass in the third degree and one year to be served concurrently for escape from custody. The total effective sentence was eighteen years. This court affirmed the judgment of conviction. *State* v. *Vidro*, supra, 71 Conn. App. 99.

On January 13, 2005, the petitioner filed an amended, two count petition for a writ of habeas corpus, claiming that his trial counsel, Norman A. Pattis, had provided

---

[1] The petitioner did not testify at trial. He instead presented his defense through the testimony of his father, sister and his then girlfriend.

ineffective assistance. The petitioner alleged, inter alia, that his constitutional right to effective assistance of counsel was denied at the criminal trial in that Pattis failed to enter into evidence a telephone bill that supported the petitioner's alibi defense and corroborated the testimony of one of his witnesses, his then girlfriend Jill Caliguiri. The habeas court issued a memorandum of decision, filed March 9, 2006, which denied the petition. The court thereafter granted certification to appeal. This appeal of the court's decision followed. Additional facts will be set forth as necessary.

We begin our analysis of the petitioner's claims by setting forth the well established standard of review for habeas appeals. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 68 Conn. App. 190, 192, 791 A.2d 588, cert. denied, 260 Conn. 910, 795 A.2d 544 (2002). "The habeas judge, as the trier of the facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 66 Conn. App. 850, 851, 785 A.2d 1225 (2001).

In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. "First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot

be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *Guadalupe* v. *Commissioner of Correction*, 68 Conn. App. 376, 380–81, 791 A.2d 640, cert. denied, 260 Conn. 913, 796 A.2d 557 (2002).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a petitioner to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment." (Citation omitted; internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 317–18, 759 A.2d 118 (2000).

The petitioner claims that Pattis provided ineffective assistance by failing to introduce into evidence a telephone bill that was used to refresh the memory of

Caliguiri. While Caliguiri was testifying, Pattis had used the telephone bill to refresh her recollection as to the timing and length of a telephone call allegedly between her and the petitioner. During jury deliberations, the jury had asked to see the telephone bill, but the court properly denied the request because the telephone bill had not been introduced into evidence. The petitioner's claim, simply put, is that somehow, if the telephone bill had been introduced as an exhibit, the jury could have drawn an inference, after review of that exhibit, that reasonably could have changed its guilty verdict. The petitioner's argument is unpersuasive. As the court noted, the telephone bill's introduction would not have shown who was speaking on the telephone from the calling or receiving end. The telephone bill merely corroborated prior uncontested evidence that a telephone call had been made on October 22, 1999, at 10:02 p.m. and lasted for sixty-seven minutes. It is rank speculation for this court to consider how the jury would have used the telephone bill in its deliberations. In this case, the jury's request to view a document that was not in evidence simply does not, by itself, establish ineffective assistance.

Furthermore, counsel's decision not to introduce the telephone bill was based on legal strategy. The petitioner's alibi defense rested on the jury's believing that he was on the telephone with Caliguiri during the time that Rivera and Young were confronting a suspect at the Quinnipiac Housing Complex. The telephone bill, however, simply established that a telephone call was made, not that the petitioner was on the line. At the habeas proceeding, Pattis testified that he did not introduce the telephone bill into evidence because in addition to showing that a telephone call was made during the time that Rivera and Young were allegedly confronting the petitioner, it also showed that calls were made

between the petitioner's and Caliguiri's telephone numbers while the petitioner was incarcerated pending trial. Pattis testified that he thought this made the alibi defense look suspicious, as it suggested that Caliguiri had reason to call the petitioner's telephone number that was unrelated to speaking with the petitioner. On the basis of Pattis' tactical reasons for not introducing the telephone bill into evidence, we cannot say that his representation fell below an objective standard of reasonableness.

The petitioner has not shown that the court's determination that Pattis' performance was not ineffective was clearly erroneous. Therefore, the court properly denied the petitioner's amended petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.