******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CARMINE KELLMAN *v.* COMMISSIONER OF CORRECTION
## (AC 39429)

Sheldon, Elgo and Mihalakos, Js.

*Syllabus*

The petitioner, who previously had been convicted of, inter alia, murder in connection with the shooting death of the victim, sought a writ of habeas corpus, claiming that his trial counsel, S, had provided ineffective assistance. The habeas court rendered judgment denying the habeas petition, concluding that the petitioner had failed to prove that he was denied the effective assistance of trial counsel. Thereafter, on the granting of certification, the petitioner appealed to this court. *Held*:

1. The petitioner could not prevail on his claim that S provided ineffective assistance by failing to meaningfully present and explain a pretrial plea offer from the state; the habeas court's finding that the petitioner failed to demonstrate that he was prejudiced by his counsel's allegedly deficient performance during pretrial plea negotiations was not clearly erroneous, as the habeas court did not find credible the petitioner's testimony regarding whether a plea deal was presented or meaningfully explained to him, and the petitioner failed to establish that it was reasonably probable that he would have accepted the plea offer.

2. The habeas court did not err in determining that the petitioner failed to establish his claim that S was ineffective by employing a deficient trial strategy that pursued an extreme emotional disturbance defense at trial, without consulting with an expert on that defense prior to trial: that court's finding that S's decision not to retain an expert witness in pursuing the extreme emotional disturbance defense was a reasonable strategic decision was not clearly erroneous and was supported by the evidence and testimony at the habeas trial, including S's testimony that he believed that it was not prudent to call an expert witness on that defense when the petitioner and lay witnesses could testify to the same evidence, that he was concerned that the jury would have looked unfavorably on an expert who was paid to testify on the petitioner's behalf, and that it was the only defense he had given the strength of the evidence against the petitioner; moreover, even if S was deficient in his performance by failing to consult with an expert on the extreme emotional disturbance defense, the petitioner did not show that S's allegedly deficient performance prejudiced him, as there was substantial evidence in the record that supported the jury's guilty verdict, and, although the petitioner speculated that the result might have been different had S chosen to utilize an expert witness, the petitioner failed to demonstrate that there was a reasonable probability that if S had consulted with or called an expert witness during the criminal trial, the jury would have had reasonable doubt as to the petitioner's guilt.

Argued September 14—officially released November 14, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Stephen A. Lebedevitch*, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Adrienne Russo*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

MIHALAKOS, J. The petitioner, Carmine Kellman, also known as Carmi Kellman,[1] appeals following the habeas court's granting of his petition for certification to appeal from its judgment denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly rejected his claims of ineffective assistance of trial counsel. Specifically, he asserts that his trial counsel, Richard Silverstein, rendered ineffective assistance because he (1) failed to meaningfully present and explain the state's pretrial plea offers and (2) failed to consult with or present an expert at the petitioner's trial regarding the extreme emotional disturbance defense. For the reasons set forth herein, we affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our disposition of the petitioner's claims. After a jury trial, the petitioner was convicted of murder in the first degree in violation of General Statutes § 53a-54a, carrying a pistol without a permit in violation of General Statutes § 29-35, and criminal violation of a protective order in violation of General Statutes (Rev. to 1993) § 53a-110b (a) (now § 53a-223).[2] The petitioner was sentenced to sixty years of incarceration for murder, one year concurrent for carrying a pistol without a permit, and one year concurrent for criminal violation of a protective order.

The petitioner's conviction was the subject of a direct appeal before this court. See *State* v. *Kellman*, 56 Conn. App. 279, 742 A.2d 423, cert. denied, 252 Conn. 939, 747 A.2d 4 (2000). In affirming the petitioner's conviction, this court concluded that the jury reasonably could have found the following facts. The petitioner and the victim, Carmen Smith, began a two year romantic relationship in 1992, which was marked by repeated domestic incidents, breakups, and reconciliations. Id., 280. Numerous complaints were lodged with the police by the victim about the petitioner. Id. In July, 1993, after an arrest based on such a complaint, the petitioner was ordered by the victim to move out of her residence. Id. The petitioner returned during a brief period of reconciliation, but was dispossessed permanently by the victim later that year. Id., 280–81.

As the petitioner continued to pursue the relationship, his behavior became more hostile, and the domestic incidents increased in severity. Id., 281. In February, 1994, the petitioner was arrested outside the victim's residence after being pursued by the police. Id. Thereafter, the victim obtained a protective order that prohibited the petitioner from entering her home and from restraining, harassing or contacting her. Id. The petitioner, however, continued to harass the victim on many occasions. Id. On Saturday, March 12, 1994, the victim

and her sister went shopping, had dinner and went to a club for the evening. Id. At approximately 2 a.m., on March 13, 1994, they returned to the victim's house, where the petitioner was waiting in the driveway. Id. As the petitioner approached the two women, he pulled out a gun, chased the victim down a walkway alongside the building, and shot her five times, causing her death. Id.

The following day, the petitioner admitted to a friend that he had been involved in the shooting that led to the victim's death. Id., 282. After his arrest, he claimed that the shooting was an unintended mistake. Id. At his criminal trial, the petitioner claimed that he was suffering from extreme emotional disturbance and that he was intoxicated when he shot the victim. Id.

Following his conviction, the petitioner, on May 15, 2013, filed a pro se petition for a writ of habeas corpus, alleging that his trial attorney, Silverstein, provided ineffective assistance of counsel. Specifically, the petitioner alleged that Silverstein advised him to reject a thirty year plea agreement because he could win the case at trial. On the basis of this advice, he rejected the state's offer, went to trial, and was convicted. On June 18, 2015, the petitioner, represented by appointed counsel, filed an amended petition, in which he alleged that he was denied his constitutional right to the effective assistance of counsel as a result of Silverstein's (1) deficient performance in plea negotiations and (2) failure to consult with an expert on the extreme emotional disturbance defense.[3] The petitioner first claimed that: "(a) [Silverstein] failed to inform the petitioner that the state made a pretrial offer in an attempt to resolve the case; (b) [Silverstein] failed to meaningfully and adequately advise the petitioner with respect to the state's pretrial offer; (c) [Silverstein] rejected the state's pretrial offer without the authorization or consent of the petitioner; and/or (d) assuming [Silverstein] did relay the offer to the petitioner, he advised the petitioner to reject the offer and proceed to trial." The petitioner claimed that but for his counsel's deficient performance relating to the plea offers, "there is a reasonable probability that . . . the results of the proceedings would have been more favorable to [him] in that [he] would have accepted the state's offer, and the trial court would have imposed the sentence pursuant to the offer." Second, the petitioner claimed that Silverstein pursued an unreasonable legal strategy in presenting the extreme emotional disturbance affirmative defense, more particularly, by "fail[ing] to obtain the opinion of an expert or get the [petitioner] evaluated by an expert," and that this "unreasonable legal strategy prejudiced the petitioner."

The habeas trial was held on November 18, 2015, and March 2, 2016. The petitioner presented testimony from Silverstein, the prosecutor in the petitioner's criminal

trial, Attorney James Dinnan, and the petitioner's expert in criminal defense, Attorney J. Patten Brown. The petitioner also testified. On June 21, 2016, the habeas court, *Oliver*, *J.*, issued a written memorandum of decision denying the petition for a writ of habeas corpus, finding that the petitioner had failed to prove that he was denied the effective assistance of trial counsel under the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The habeas court granted the petition for certification to appeal. This appeal followed. Additional facts and procedural history will be introduced as necessary.

We first set forth the standard of review and legal principles applicable to the petitioner's appeal. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review. . . . Therefore, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Citation omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 822, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

It is well established that "[a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings . . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 775, 138 A.3d 908 (2016).

"A claim of ineffective assistance of counsel as enunciated in *Strickland* v. *Washington*, supra, 466 U.S. 668, consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction*, 137 Conn. App. 382, 387, 47 A.3d 956, cert. denied, 307 Conn. 921, 54 A.3d 182 (2012). "Our Supreme Court has stated that the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances, and that [j]udicial scrutiny of counsel's performance must be highly deferential." (Internal quotation marks omitted.) Id., quoting

*Ham* v. *Commissioner of Correction*, 301 Conn. 697, 706, 23 A.3d 682 (2011).

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . To satisfy the second prong of *Strickland*, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there is a reasonable probability that, but for that ineffectiveness, the outcome would have been different." (Internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, supra, 321 Conn. 776. "In making this determination, a court hearing an ineffectiveness claim [based on counsel's failure to investigate] must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." (Internal quotation marks omitted.) Id., quoting *Strickland* v. *Washington*, supra, 466 U.S. 695–96.

A petitioner's claim will "succeed only if both prongs are satisfied. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unworkable." (Citation omitted; internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, 130 Conn. App. 291, 295, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011). "A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 704.

I

The petitioner first claims that Silverstein provided ineffective assistance either by failing to inform him that the state had made a pretrial plea offer, or, alternatively, if he was informed of the offer, that Silverstein did not meaningfully explain the plea offer to him.

The United States Supreme Court has held that pretrial negotiations implicating the decision as to whether to plead guilty is a critical stage in criminal proceedings for purposes of the sixth amendment right to effective assistance of counsel. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient perfor-

mance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri* v. *Frye*, 566 U.S. 134, 147, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); see also *Padilla* v. *Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) ("[b]efore deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel" [internal quotation marks omitted]).

The petitioner claims that Silverstein's performance during the pretrial plea negotiations fell below objectively reasonable standards. On this issue, the habeas court determined only that the petitioner had not met his burden on the prejudice prong. We need not address the performance prong of *Strickland* v. *Washington*, supra, 466 U.S. 687, on appeal because the habeas court did not address the performance of the petitioner's counsel as it relates to pretrial plea negotiations, nor was the habeas court required to do so. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 525–26, 903 A.2d 169 (2006); see also *Elsey* v. *Commissioner of Correction*, 126 Conn. App. 144, 162, 10 A.3d 578, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011) ("[b]ecause both prongs . . . [of the *Strickland* test] must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong" [internal quotation marks omitted]).

The petitioner's claim concerning whether a plea deal was presented or meaningfully explained to him, specifically, whether this prejudiced him, depends entirely on the habeas court's determinations on credibility, to which we defer on appeal. "The habeas judge, as the trier of the facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Vidro* v. *Commissioner of Correction*, 105 Conn. App. 362, 366, 938 A.2d 607, cert. denied, 286 Conn. 908, 944 A.2d 982 (2008). "It is well established that a reviewing court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to

the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 117 Conn. App. 120, 125–26, 977 A.2d 772, cert. denied, 294 Conn. 904, 982 A.2d 647 (2009). Because the petitioner's claim is premised entirely on issues of credibility, he cannot prevail.

In the present case, the habeas court summarily dismissed the petitioner's testimony as "loose, equivocal and unconvincing," based on his equivocations regarding whether he was made aware of the plea offer, both in his conflicting habeas petitions and his testimony at the habeas trial. The following exchange between the petitioner and the court highlights the inconsistencies between the two petitions for writ of habeas corpus:

"[The Court]: . . . Were you ever aware of an offer from the prosecutor?

"[The Petitioner]: Never aware of the offer.

"[The Court]: I'm sorry?

"[The Petitioner]: Never aware of the offer, no. . . .

"[The Court]: Did anyone ever tell you that there was an offer from a prosecutor short of going to trial and being convicted?

"[The Petitioner]: Well, like I mentioned, the prosecutor, Silverstein, mentioned it was an offer, but he never told me what the offer was. . . .

"[The Court]: Okay. Did Attorney Silverstein ever tell you—so is it fair to say that you never heard a number until you heard the number thirty from someone?

"[The Petitioner]: Yeah, I never heard a number.

"[The Court]: And you never heard a number from Attorney Silverstein, ever?

"[The Petitioner]: Never.

"[The Court]: Where did you get the number you wrote in your self-represented petition? Let's see here. You wrote . . . 'I claim Attorney Silverstein advised me to reject a thirty year plea agreement and he advised me that he can win my case at trial.' What do you mean when you wrote that? It seems pretty clear to me, but what did you mean when you wrote that?

"[The Petitioner]: I wrote it because, after I found out that the thirty, thirty-five years was the . . . you know, was the offer, which I learned from another attorney before . . . before [Attorney Ashley] Hopkins.

"[The Court]: Okay. And you said something just now that's not what you wrote. You said thirty to thirty-five. Who told you—well, why did you write, 'I claim Attorney Silverstein advised me to reject a thirty year plea agreement.' Why did you write that?

"[The Petitioner]: [Attorney] Carpenter told me about the plea offer . . . so that's how I found out, through [Attorney Jerry Rosenblum's] records.[4]

"[The Court]: Found out what?

"[The Petitioner]: That there was . . . an offer. [There] was an offer on the table.

"[The Court]: Offer of what?

"[The Petitioner]: Of thirty-five or thirty and the forty. . . .

"[The Court]: You said thirty, you said thirty-five and you said forty. Tell me where all of this is coming from inside your head, please.

"[The Petitioner]: Well, she said that—she gave me the same thing, that the prosecutor wanted fifty, the judge wanted I guess forty, and they was willing—he asked for thirty or thirty-five years."

To establish prejudice in a lapsed plea case, "a petitioner need establish only that (1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013).

In the present action, the petitioner has established that the trial judge would have accepted the plea agreement, because the trial judge participated in pretrial conferences in which the court indicated what offers it might accept.[5] The petitioner, however, has not established that it was reasonably probable that *he* would have accepted the plea offer. As the habeas court noted, "[r]egarding prejudice, nearly two decades later, the petitioner has still not testified that he would have accepted an offer in the thirty to forty year range, indicating, 'I don't know.' The twenty-five year sentence he would have accepted was never available to him." We thus conclude that the habeas court's finding that the petitioner did not demonstrate prejudice was not clearly erroneous.

II

The petitioner next claims that he received ineffective assistance of counsel because of the allegedly deficient trial strategy employed by Silverstein in pursuing the extreme emotional disturbance affirmative defense at trial. The petitioner claims that Silverstein was deficient in selecting and presenting this defense, and had he consulted an expert prior to trial, he could have presented evidence to the jury that rose to the level of extreme emotional disturbance. Alternatively, the petitioner argues that an expert would have persuaded Sil-

verstein not to pursue the defense at all, specifically stating, "[a]n expert could help develop the themes of the defense, or inform the attorney if there is an actual basis for the [extreme emotional disturbance] defense to be asserted." On this issue, the habeas court discussed both the performance and prejudice prongs of *Strickland* in determining that the petitioner had not met his burden to prove ineffective assistance of counsel. We address each prong in turn.

"To satisfy the performance prong [of the *Strickland* test], a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 713, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). Inasmuch as "[c]onstitutionally adequate assistance of counsel includes competent pretrial investigation"; *Siemon* v. *Stoughton*, 184 Conn. 547, 554, 440 A.2d 210 (1981); "[e]ffective assistance of counsel imposes an obligation [on] the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 100 Conn. App. 94, 102, 917 A.2d 555, cert. denied, 282 Conn. 914, 924 A.2d 140 (2007).

Similarly, the United States Supreme Court has emphasized that a reviewing court is "required not simply to give [the trial attorney] the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as [he] did . . . ." (Citations omitted; internal quotation marks omitted.) *Cullen* v. *Pinholster*, 563 U.S. 170, 196, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 680, 51 A.3d 948 (2012).

The petitioner claims that Silverstein's failure to call an expert could not have been a reasonable tactical decision because Silverstein failed to investigate the usefulness of such an expert. We begin by noting that

there is no per se rule that requires a trial attorney to seek out an expert witness. However, this court noted that in some cases, "the failure to use any expert can result in a determination that a criminal defendant was denied the effective assistance of counsel." (Internal quotation marks omitted.) *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 811, 40 A.3d 796, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012); see also *Lindstadt* v. *Keane*, 239 F.3d 191, 201–202, 204 (2d Cir. 2001) (holding that failure to consult an expert on sexual abuse of children constituted inadequate assistance). This court has also determined that "[t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 481, 969 A.2d 860, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009). Therefore, the burden is on the petitioner to show that an expert would have been necessary to establish the extreme emotional disturbance defense in this case.

The affirmative defense of extreme emotional disturbance, as described in *State* v. *Elliot*, 177 Conn. 1, 411 A.2d 3 (1979), allows the defendant to mitigate the charge of murder to manslaughter if he can prove by a fair preponderance of the evidence: "(a) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the Penal Code; (b) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (c) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings, such as passion, anger, distress, grief, excessive agitation or other similar emotions." Id., 9.

The habeas court determined that the petitioner had not presented sufficient evidence "to establish a reasonable probability that consultation with an expert or presenting such an expert at trial would have been helpful in asserting the [extreme emotional disturbance] defense." Furthermore, the court found that Silverstein's decision not to retain an expert witness in pursuing the extreme emotional disturbance defense was a reasonable strategic decision. Silverstein's testimony indicated that he made a strategic decision in choosing to pursue the extreme emotional disturbance defense through the testimony of the petitioner and lay witnesses, rather than an expert witness. Silverstein testified that he did not find evidence of a clinical psychological issue, stating that "[the petitioner] never made me aware of any background that he had suffered from any type of [psychological issues] . . . . He told me he was depressed, but it was about the relationship. It wasn't independent of the relationship." From speak-

ing with many people who knew the petitioner, Silverstein learned that "he was in love with a woman who didn't love him, who was seeing other people, who had a child that he had a very close bond with, who he took care of, and that, in my mind, you know, he couldn't control the jealousy, the rage, the anger he was feeling towards her." On the basis of these interviews, Silverstein determined that he did not believe it would be prudent to call an expert witness when the petitioner and lay witnesses could testify to the same evidence.

Silverstein was also concerned that the jury would look unfavorably on an expert who was paid to testify on the petitioner's behalf. He testified, "I had a way, an idea how I was going to argue the case, and putting an expert up there who I'd pay to say that he is depressed is not going to help me or [the petitioner], in my mind. . . . [I]f you're calling an expert in on a psychological type of thing or to testify about extreme emotional distress . . . they know I'm paying them. Their conclusions are, you know, if not borne out by the facts, don't really help and it gives the state's attorney an opportunity to get up there and say, you know: He calls in an expert who's now going to tell you that he acted under extreme emotional distress. He paid this expert. The expert saw him nine months after the incident. What else is the expert going to say?" On the basis of this testimony, the habeas court properly found that it was not objectively unreasonable for Silverstein to choose not to call an expert for the extreme emotional disturbance defense.

The court's determination of reasonableness is also supported by the record, specifically, the testimony of Dinnan and Brown. When asked if the petitioner had presented an expert in support of his extreme emotional disturbance defense, Dinnan testified, "I don't recall any expert, which isn't unusual for that particular defense." When the court questioned him further on this, Dinnan responded: "That's just my experience. They put on the facts surrounding it, the history of the particular relationship, and that's . . . again, that's what I recall happening in this particular case." Furthermore, the habeas court was not persuaded by the testimony of the petitioner's expert, Brown, as he stated it was unreasonable for Silverstein to fail to consult an expert in this case, but admitted that he had never raised the defense at trial and had only used it during pretrial negotiations to advocate for a better deal for his client.[6]

The petitioner also claims that the defense itself was an unreasonable trial strategy, and that if Silverstein had consulted with an expert, he may not have pursued the defense at all. But, as Silverstein testified, "it was the only defense he had," based on the strength of the evidence against the petitioner and the state's unwillingness to reduce the charge from murder to manslaughter. Facing this scenario, the habeas court found that Sil-

verstein's decision to move forward with the extreme emotional disturbance defense was a "necessity, compelled by an offer of an unacceptably lengthy prison term based on compelling evidence of guilt." Therefore, we conclude that the habeas court's finding that "the defense presented by underlying counsel was not unreasonable in light of all of the evidence" was not clearly erroneous.

Even if Silverstein was deficient in his performance by failing to consult with an expert on the extreme emotional disturbance defense, the petitioner did not show that this allegedly deficient performance prejudiced him. "It is well established that a petitioner in a habeas proceeding cannot rely on mere conjecture or speculation to satisfy either the performance or prejudice prong but must instead offer demonstrable evidence in support of his claim." (Internal quotation marks omitted.) *Lopez* v. *Commissioner of Correction*, 142 Conn. App. 53, 59, 64 A.3d 334 (2013); see also *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 599, 940 A.2d 789 (2008) (petitioner's burden not met by speculation but by demonstrable realities); *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005) ("[s]peculation and conjecture have no place in appellate review").

We conclude that the petitioner has failed to demonstrate that there is a reasonable probability that if Silverstein had consulted with or called an expert witness during the criminal trial, the jury would have had reasonable doubt as to the petitioner's guilt. The petitioner has simply speculated that the result might have been different had Silverstein chosen to utilize an expert witness. We also note the substantial evidence in the record that would support the jury's guilty verdict. Specifically, the victim and the petitioner had a long history of domestic violence incidents, and witnesses testified at trial that the victim screamed in terror as the petitioner pursued her before shooting her five times at close range. *State* v. *Kellman*, supra, 56 Conn. App. 281. The petitioner subsequently confessed to firing the shots that killed the victim to numerous people, including members of the New Haven Police Department. On the basis of the strength of the evidence presented to the jury, we conclude that the petitioner has not met his burden of showing that the jury verdict might have been different without counsel's allegedly deficient performance.

On the basis of our review of the record, we hold that the court's factual findings and legal conclusions are sufficiently supported by the record. We therefore hold that the court did not err in determining that the petitioner failed to prove ineffective assistance of counsel. Accordingly, we conclude that the court properly denied the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] While the habeas pleadings refer to the petitioner as "Carmine," the petitioner testified at the habeas trial that his first name is "Carmi," and this court's direct appeal decision refers to him as "Carmi." See *State* v. *Kellman*, 56 Conn. App. 279, 742 A.2d 423, cert. denied, 252 Conn. 939, 747 A.2d 4 (2000).

[2] The petitioner was also acquitted of one count of stalking in the first degree in violation of General Statutes § 53a-181c (a) (2).

[3] The petitioner's amended habeas petition also included a claim of ineffective assistance of counsel regarding failure to apply for sentence review, but that issue has not been raised on appeal.

[4] Rosenblum was initially appointed to represent the petitioner at the time of his arraignment, but he became ill and was replaced by Silverstein prior to trial. Carpenter represented the petitioner in his first habeas petition, filed in 2011.

[5] At the habeas trial, Dinnan testified that Judge Damiani conducted pretrial negotiations and made an offer that he indicated he would accept, stating in relevant part that "[t]he procedure that occurred is we had a pretrial conference with Judge . . . I believe it was Judge Damiani. I had made an offer of fifty years that would encompass all the charges. . . . Judge Damiani indicated he would do forty years to encompass all the charges, and then . . . Rosenblum went downstairs into the lockup to discuss the matter with [the petitioner], and it was not accepted."

[6] During the habeas proceeding, the following exchange occurred between the respondent's counsel and Brown:

"[The Respondent's Counsel]: Do you recall when about the first case was that you raised an [extreme emotional disturbance] defense?

"[Brown]: Oh, I mean, the first case would have been . . . . I don't recall exactly. . . . A couple of them I can tell you I know I hired an expert, and the expert basically said there's nothing here, so I just kind of tried to bluff my way through it and get a better deal, but, so those weren't all that went to trial or anything like that.

"[The Respondent's Counsel]: Okay. So these were potential defenses that you were exploring pretrial?

"[Brown]: Correct. Correct.

"[The Respondent's Counsel]: How many extreme emotional disturbance defenses did you raise at—have you raised at trial?

"[Brown]: At trial—well, I've only raised them at pretrial. I haven't raised them at trial, and we've been able to work it out once we disclose the expert report."

––––––––––––––––––